**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**MURADIJA NUHANOVIC,**

    **Plaintiff,**

**v.**                                 **Case No.  8:12-cv-1747-T-33TBM**

**CAROLYN W. COLVIN, Acting
Commissioner of the United States
Social Security Administration,**[1]

    **Defendant.**
                                       /

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed and remanded.

A.

Plaintiff was forty-five and forty-six years of age at the time of her administrative hearings. She stands 5 feet tall and weighed 159 pounds. Plaintiff has a fifth-grade education in Bosnia. (R. 50, 63, 234). Plaintiff reported past relevant work as a dish washer, painter, and packer. (R. 251-58). Plaintiff applied for disability benefits and Supplemental Security

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

Income payments on July 9, 2008, alleging disability as of June 1, 2007, by reason of mental illness, memory loss, auditory hallucinations, loss of concentration, anxiety, a sleep disorder, inability to communicate with people, post traumatic stress disorder ("PTSD"), and major depressive disorder. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff next received *de novo* hearings before Administrative Law Judges ("ALJ"). Her first hearing on November 12, 2010, was continued due to technical difficulties. Her second hearing was held on April 13, 2011, before a different ALJ. The Plaintiff was represented at the hearing by counsel and testified on her own behalf with the assistance of a Bosnian interpreter.[2] Additionally, a vocational expert was called by the ALJ.

Plaintiff testified that she lived in Bosnia during the war and witnessed her family members killed and hundreds of people die. She later moved to the United States and worked as a packer, hotel and restaurant cleaner, and frame painter. She last worked in Washington before moving to Florida, where she initially looked for jobs but then started treatment for psychiatric problems.

Plaintiff sought treatment because she was having headaches and was nervous and stressed. Her thoughts made her want to scream; she was afraid of being sent back to Bosnia. She was given medication and went to therapy with an interpreter. Plaintiff fears that someone will attack her. She suffered from those fears in Washington, but they have gotten worse. Being around other people bothers her. When she leaves home with her family, they

---

[2] At the outset of the hearing, the ALJ addressed with counsel certain evidence pertaining to investigations of Plaintiff, whether or not Plaintiff could speak English, and a report of malingering. *See, e.g.* (R. 44-61). On questioning by counsel, Plaintiff addressed the same. *See* (R. 71-72).

usually make a quick trip to the store and she does not have problems with other people when her family is around. Her daughter-in-law goes with her for treatment at Suncoast Center for Community Mental Health ("Suncoast"). She cannot sit for very long in the lobby because she gets nervous and wants to go home. She also has problems with memory. She forgets to take her medication and what she is saying when speaking. She has problems concentrating and focusing because she has thoughts that someone is screaming or calling her. The thoughts are recollections of what she saw in Bosnia. Plaintiff has trouble sleeping because she dreams of someone screaming.

Regarding her physical problems, Plaintiff testified she had a stroke. She suffers pain in both of her legs, her right arm, shoulder, and neck because they are swollen. She also has headaches every day, particularly on the right side.

Plaintiff testified to limited capabilities and daily activities. She does not do any cooking or cleaning. During the day, she will lay down to watch television. She watches the English-speaking programs. Although she cannot really speak English she is able to understand about fifteen percent of what she hears. She has problems sitting for a long period of time. If she sits for too long her back starts to hurt and she needs to move and shift. She can sit for about an hour. She cannot stand for long periods of time. She can walk for about five to ten minutes. After that, her legs will start hurting. She cannot lift anything because she has pain in her neck, shoulder, arm and leg. If she were to go back to work, she thinks she would have problems getting along with people and would forget to show up. She does not believe that she can fix her problems with concentration, although going to Suncoast has helped. (R. 62-83).

3

The ALJ next took testimony from Scott Brown, a vocational expert ("VE"). On a hypothetical question assuming an individual of the same age, education, past work experience as Plaintiff, but with the limitation that the individual would be off task twenty percent of the time during an eight-hour work day, the VE opined that such an individual would be able to hold a job in a less competitive economy. If such an individual was off task fifty percent of the time, the VE opined that such person would not be able to perform any of Plaintiff's past relevant work and there would be no other work available. (R. 83-85).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of May 26, 2011, the ALJ determined that Plaintiff had medically determinable impairments of history of hyperlipidemia, PTSD, peripheral neuropathy, gastroesophageal reflux disease, vitamin D deficiency, chronic pain syndrome, and major depressive disorder but that the impairments were not severe individually or in combination. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 23-34). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

B.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms

of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Dyer v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises four claims on this appeal. By her first three claims, she contends that, in assessing her RFC, the ALJ erred by failing to (1) consider the opinions of Dr. Patel; (2) consider the opinions of nonexamining psychologist, Dr. Putney; and (3) consider the opinions of the physicians at Professional Health Care. By her fourth claim, she contends that the ALJ erred by failing to find depression and PTSD as severe impairments. (Doc. 17 at 18).

Because I conclude the ALJ erred at step two of the sequential evaluation by finding that Plaintiff did not have any severe impairments, I recommend that the decision be reversed and the case remanded.

At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Id.* A "[c]laimant need show only that her impairment is not so slight and its effect not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). If the claimant does not have an impairment or combination of impairments that significantly limits her ability to do basic

work activities, then she is not disabled.[3] Here, despite any questions about Plaintiff's credibility, the medical record demonstrates that Plaintiff has a severe impairment under this minimal standard.

In short, treatment records from Suncoast, the consultative evaluation by Gerald J. Hodan, Ph.D., and the opinions of Martha Putney, Ph.D., all clearly support that Plaintiff suffers at least moderate limitations in function by reason of her PTSD and/or major depression. *See, e.g.* (R. 305, 390-92, 394-96, 417, 456, 458, 495, 554-58, 586, 590-93, 686). While recognizing these records, the ALJ discounted them at step two by noting that the records from Suncoast were chiefly from a nurse practitioner, and otherwise there were no opinions from a treating doctor that Plaintiff was disabled. *See* (R. 26-29). The ALJ also noted there were contrary assessments by a consulting examiner, Peter Burstein, Ph.D., and a non examining agency doctor, Arthur Hamlin, Psy.D. *See* (R. 29-30). By my consideration, however, the fact that no treating doctor found Plaintiff disabled is insignificant at step two. *See Brady*, 724 F.2d at 920. So too is the ALJ's view of the Plaintiff's credibility. Moreover, a close reading of Dr. Burstein's report does not reveal an assessment contrary to the findings by the nurse practitioner at Suncoast, Dr. Hodan, and Dr. Putney that Plaintiff suffers a mental impairment which causes more than minimal functional limitations. Indeed, Dr. Burstein left open the possibility that Plaintiff may have mental health difficulties but he concluded that,

---

[3]The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Id.*

7

based on test results suggesting she was "faking bad" or exaggerating her symptoms, a diagnostic impression beyond malingering could not be given on his examination. (R. 544). While one nonexamining doctor cited this lack of credibility in concluding that Plaintiff did not have a severe impairment (R. 579), the opinion of that doctor, standing alone, does not provide substantial support for the ALJ's conclusion. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988) (quoting *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir. 1987)).

In sum, the showing required at step two is minimal and Plaintiff's medical records reveal a condition that satisfied the standard. This conclusion in no way speaks to the matter of Plaintiff's credibility or the matter of disability. As her counsel concedes, Plaintiff gave answers to both consulting examiners which, at a minimum, were inaccurate. Such could impact the assessment of her credibility and her residual functional capacity at step four of the evaluation process. However, in my view, it is at step four or perhaps step five where this claim necessarily will be decided.

I also concur with Plaintiff's argument that the ALJ failed to properly consider the treatment records from Haresh Patel, M.D. (R. 596-610, 674-80). Here, Plaintiff argues that his treatment reports reflect numerous tests performed, including an MRI of the brain in October 2010 that showed right and left lacunar infarct. Other notes reflect electrical studies showing bilateral carpal tunnel syndrome, ulnar entrapment neuropathies at both elbows, bilateral chiasmatic dysfunction, bilateral cortical dysfunction, and abnormal reaction times in eye movements to head movement. Yet, the ALJ failed to address the reports or indicate the weight afforded them. (Doc. 17 at 18-20). In response, the Commissioner urges that although the ALJ did not explicitly discuss Dr. Patel's records, there is no rigid requirement

that the ALJ specifically refer to every piece of evidence in his decision.  Moreover, Plaintiff did not allege the physical conditions as bases for her alleged disability.  Therefore, the Commissioner contends that the ALJ was not obligated to investigate or further discuss these conditions.  (Doc. 18 at 11-15).

In this circuit, the ALJ must state with particularity the weight given different medical opinions and the reasons for the weight given, and failure to do so is reversible error. *Sharfarz*, 825 F.2d at 279.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Here, the decision reflects only brief mention of one of Dr. Patel's records (R. 26) and the ALJ's rejection of any significant physical complaints based on the case analysis by Albert Ponterio, M.D., rendered nearly 18 months earlier.  (R. 27, 581).  As the record reflects, Dr. Patel treated Plaintiff into 2010 and 2011.  On remand, proper consideration of this treating doctor's records is necessary, as is the ALJ's statement as to the weight afforded his testimony.  *See Sharfarz*, 825 F.2d at 279.

In light of the findings above, Plaintiff's other arguments need not be addressed.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised).  On remand, however, all record evidence should be considered in accordance with governing case law and applicable regulatory provisions.

9

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation.  I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

> Respectfully submitted this
> 26th day of August 2013.
>
> _____
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Virginia M. Hernandez Covington, United States District Judge
Counsel of Record